T.C. Memo. 2017-163

UNITED STATES TAX COURT

ROBERT FISCALINI, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 30464-15.                    Filed August 24, 2017.

Robert Fiscalini, pro se.

<u>Bryant W. Smith</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined a deficiency in, an addition

under section 6651(a)(1)[1] to, and an accuracy-related penalty under section

_____

[1]All section references are to the Internal Revenue Code (Code) in effect for
the year at issue.  All Rule references are to the Tax Court Rules of Practice and

(continued...)

[*2] 6662(a) on petitioner's Federal income tax (tax) for his taxable year 2007 of $278,186, $69,845.25, and $55,637.20, respectively.

The issues remaining for decision for petitioner's taxable year 2007 are:

(1) Is petitioner required to recognize certain long-term capital gain from the sale of his personal residence? We hold that he is.

(2) Is petitioner liable for the addition to tax under section 6651(a)(1)? We hold that he is.

(3) Is petitioner liable for the accuracy-related penalty under section 6662(a)? We hold that he is.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioner, Robert Fiscalini, resided in California at the time he filed the petition.

At all relevant times, including during 2007, the year at issue, petitioner operated a cement contracting business and built swimming pool decks (collectively, petitioner's construction business).

---

[1](...continued)
Procedure.

[*3]   On March 31, 1993, petitioner and his parents, Robert Fiscalini, Sr., and Kathleen Fiscalini (sometimes collectively, the Fiscalinis), purchased a house at 1591 McCloskey Road, Hollister, California (sometimes, McCloskey Road property) for $274,312.  Petitioner's parents paid $40,000 for their interest in the McCloskey Road property, and petitioner paid $234,312 for his interest.  In order to finance the purchase of his interest in the McCloskey Road property, petitioner borrowed $234,312.  That loan was secured by a mortgage on the McCloskey Road property.  (We shall refer to the loan secured by a mortgage that petitioner had obtained with respect to the McCloskey Road property as petitioner's mortgage loan.)

From the purchase of the McCloskey Road property until at least August 1, 2007, petitioner resided on that property.  (We shall sometimes refer to the McCloskey Road property where petitioner resided as petitioner's residence.)  During 2002, petitioner made certain improvements to the McCloskey Road property, including building a swimming pool on the property with certain equipment that he used in petitioner's construction business.  Petitioner also converted a detached garage on the McCloskey Road property into a game room.

**[*4]** On April 29, 2003, the Fiscalinis transferred their interest in the McCloskey Road property to petitioner. Petitioner did not give them any cash or other property in return for that interest.

On several occasions not established by the record before August 1, 2007, petitioner refinanced petitioner's mortgage loan on the McCloskey Road property. During 2007, petitioner was unable to make certain loan payments that became due with respect to that property. Around August 1, 2007, in order to avoid foreclosure on the McCloskey Road property, petitioner sold that property to his parents.

In order to finance the purchase of the McCloskey Road property, the Fiscalinis borrowed $682,500 from Downey Savings. They used most of those borrowed funds to discharge the balances totaling $505,753.39 and $158,295.04, respectively, of two loans that petitioner had outstanding with respect to the McCloskey Road property. (We shall sometimes refer to the balances totaling $505,753.39 and $158,295.04, respectively, of two loans that petitioner had outstanding with respect to the McCloskey Road property and that his parents discharged when they acquired that property as petitioner's discharged liabilities of $664,048.43.) The respective closing statements of the seller, petitioner, and the buyers, the Fiscalinis, with respect to the sale and the purchase of the

[*5] McCloskey Road property showed that they had agreed that the "Total Consideration" for that sale and that purchase was $975,000 and that petitioner was making a "Gift of Equity To Buyer [the Fiscalinis]" of $295,655.35. The buyer's closing statement also showed that petitioner incurred settlement charges totaling $16,751.24 (petitioner's settlement costs).

Alliance Title Co. issued for taxable year 2007 Form 1099-S, Proceeds From Real Estate Transactions, to petitioner, as the transferor of property at 1591 McCloskey Road, Hollister, California, that showed "Gross Proceeds" of $975,000 and that "Property or Services [Were] Not Received".

Petitioner did not file timely a tax return for his taxable year 2007 because he was unable to pay any tax due for that year. In June 2013, petitioner filed Form 1040, U.S. Individual Income Tax Return, for his taxable year 2007 (2007 return). Petitioner did not report in that return any gain from the sale of petitioner's residence to the Fiscalinis.

Respondent issued a notice of deficiency (notice) to petitioner with respect to his taxable year 2007. In that notice, respondent determined that petitioner must recognize $975,000 of long-term capital gain from "the sale of capital assets", i.e., petitioner's residence. Respondent also determined in the notice that

[*6] petitioner is liable for his taxable year 2007 for the addition to tax under section 6651(a)(1) and the accuracy-related penalty under section 6662(a).

OPINION

Petitioner bears the burden of proving that respondent's determinations in the notice are erroneous. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

We address first whether petitioner is required to recognize any long-term capital gain from the sale of petitioner's residence. It is petitioner's position that he is required to recognize only $70,487 of long-term capital gain from that sale. It is respondent's position that petitioner must recognize $473,536.76 of long-term capital gain from the sale of petitioner's residence.

Respondent concedes that, in determining the amount of any capital gain that petitioner realized from the sale of the McCloskey Road property, he is entitled to reduce the amount realized from that sale, as determined under section 1001(b), by petitioner's settlement costs of $16,751.24. Respondent also concedes that petitioner is entitled under section 121 to exclude from gross income $250,000 of the capital gain that he realized from the sale of petitioner's residence, as determined under section 1001(a) and (b).

[*7]    The parties disagree over the amount of capital gain that petitioner realized from the sale of the McCloskey Road property.  That is because they disagree over petitioner's adjusted basis in, and the amount realized from the sale of, that property.  According to petitioner, his adjusted basis in the McCloskey Road property when he sold it was $329,687.  According to respondent, petitioner's adjusted basis in that property at that time was $234,312.  According to petitioner, the amount realized from the sale of petitioner's residence is $650,199.  According to respondent, the amount realized from that sale is $975,000 reduced by petitioner's settlement costs of $16,751.24.[2]

Before turning to the parties' disagreements, we summarize the pertinent Code and regulatory provisions which, when applied to the facts that we have found, will resolve those disagreements.  Section 1001(a) provides that the gain from the sale of property is the excess of the amount realized therefrom over the adjusted basis of the property provided in section 1011.  Section 1.1001-1(e)(1), Income Tax Regs., provides that where a transfer of property is in part a sale and

_____

[2]For convenience, we shall generally not restate respondent's concession regarding petitioner's settlement costs throughout our discussion and resolution of the dispute between the parties over the amount realized from the sale of the McCloskey Road property.

**[*8]** in part a gift the transferor has a gain to the extent that the amount realized exceeds the transferor's adjusted basis in the property.

Section 1001(b) provides that the amount realized from the sale of property is the sum of any money received plus the fair market value of property other than money that is received. Section 1.1001-2(a)(1), Income Tax Regs., provides that generally the amount realized from the sale of property includes the amount of liabilities from which the transferor is discharged as a result of the sale. Section 1001(c) provides that, except as otherwise allowed by the Code,[3] the entire amount of the gain determined under section 1001 on the sale of property is to be recognized.

Section 1011(a) provides that the adjusted basis for determining gain from the sale of property is the basis determined under section 1012 or other applicable sections of subchapter O of the Code (e.g., section 1015), adjusted as provided in section 1016. Section 1012(a) provides that generally the basis of property is the cost of the property. Section 1015(a) provides that generally the basis of property acquired by gift is to be the same as it would be in the hands of the donor. Section

---

[3]As respondent concedes, sec. 121 is an exception to the rule in sec. 1001(c) that is applicable here.

**[*9]** 1016(a)(1) provides that in all cases there is to be a proper adjustment to the basis of property for expenditures properly chargeable to capital account.

We consider now the parties' dispute over petitioner's adjusted basis in the McCloskey Road property. Petitioner first argues that, in determining his adjusted basis in that property when he sold it to his parents in 2007, his cost basis of $234,312 in that property[4] should have already been increased in 2003 by the cost basis of $40,000 that the Fiscalinis had in their interest in that property. That is because, according to petitioner, his parents made a gift of that interest to him in 2003. Respondent disagrees. The only argument that respondent advances in support of respondent's disagreement is that "coowners of an asset only have a cost basis in the amount each has paid" for the asset.

We reject respondent's argument. That argument disregards the facts and the applicable law. We have found on the record before us that petitioner did not give his parents any cash or other property in return for their interest in the McCloskey Road property when they transferred that interest to him in 2003. In other words, we have found that in 2003 the Fiscalinis made a gift of their interest in that property to petitioner. Pursuant to section 1015(a), petitioner's basis in the

---

[4]Respondent agrees that petitioner's cost basis in the McCloskey Road property is $234,312, the amount that he paid for his interest in that property when he and the Fiscalinis purchased it in 1993.

**[*10]** interest in the McCloskey Road property that his parents gave to him in 2003 is the same as their cost basis in that interest, namely, $40,000.

On the record before us, we find that in 2003, after the Fiscalinis gave petitioner their interest in the McCloskey Road property, his basis in that property was equal to the sum of his cost basis of $234,312 in the interest in that property that he purchased in 1993 and his basis of $40,000 in his parents' interest in that property which they gave to him in 2003, or $274,312.

Petitioner further argues that, in determining his adjusted basis in the McCloskey Road property when he sold it to his parents in 2007, his basis of $274,312 in that property should also be increased under section 1016(a)(1) by total costs of $50,000 that he claims he incurred in building a swimming pool on the property with certain equipment that he used in petitioner's construction business and converting a detached garage on the property into a game room. In support of his argument regarding those claimed costs of $50,000, petitioner relies on his self-serving, uncorroborated, and general testimony regarding the amount of those claimed costs. We are unwilling to, and we shall not, rely on petitioner's testimony to establish the costs of the improvements to the McCloskey Road property that he claims he incurred. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

**[*11]**  On the record before us, we find that petitioner has failed to carry his burden of establishing that, in determining his adjusted basis in the McCloskey Road property when he sold it to his parents in 2007, his basis of $274,312 should also be increased under section 1016(a)(1) by total costs of $50,000 that he claims he incurred in building a swimming pool on the property with certain equipment that he used in petitioner's construction business and converting a detached garage on the property into a game room.

Based upon our examination of the entire record before us, we find that petitioner's adjusted basis in the McCloskey Road property when he sold it to his parents in 2007 was $274,312.

We consider next the parties' disagreement over the amount realized from petitioner's sale of the McCloskey Road property to his parents.  The parties agree that the amount realized from that sale includes petitioner's discharged liabilities of $664,048.43.  See sec. 1.1001-2(a)(1), Income Tax Regs.[5]  They disagree over whether the amount realized includes any other amount.  According to petitioner, the amount realized should include no other amount because his sale of the McCloskey Road property to the Fiscalinis was in part a sale and in part a gift to them.  Petitioner maintains that the amount of that gift is the difference between

_____

[5]See supra note 2.

[*12] the total consideration for the sale of that property (i.e., $975,000) shown in the respective closing statements of the seller, petitioner, and the buyer, the Fiscalinis, and petitioner's discharged liabilities of $664,048.43 (i.e., $310,951.57). Respondent disagrees. As we understand respondent's argument in support of respondent's disagreement, the total consideration of $975,000 shown in the respective closing statements of petitioner and the Fiscalinis controls the determination of the amount realized under section 1001(b). In advancing that argument, respondent states: "Petitioner and his parents, in full knowledge of the relevant facts agreed to a sales price of $975,000.00, which is, by definition, the fair market value of the McCloskey [Road] Property on that date [of sale]."

We reject respondent's argument. That argument disregards the definition of the term "amount realized" in section 1001(b), the regulations thereunder, and pertinent caselaw. As discussed above, section 1001(b) provides that the amount realized from the sale of property is the sum of any money received plus the fair market value of property other than money that is received. Section 1.1001-2(a)(1), Income Tax Regs., provides in pertinent part that generally the amount realized from the sale of property includes the amount of liabilities from which the transferor is discharged as a result of the sale. The Fiscalinis acquired from petitioner the McCloskey Road property that respondent concedes had a fair

**[\*13]** market value of $975,000 at the time they acquired it. Petitioner received no cash and no other property from his parents as a result of the sale of that property to them although they did discharge certain mortgage loans that he had with respect to that property at the time of that sale, namely, petitioner's discharged liabilities of $664,048.43. What respondent disregards or fails to understand is that petitioner's sale of the McCloskey Road property to his parents was a transfer of property that was in part a sale and in part a gift. See sec. 1.1001-1(e)(1), Income Tax Regs.

Based upon our examination of the entire record before us, we find that the amount realized, before taking into account respondent's concession regarding petitioner's settlement costs of $16,751.24, from petitioner's sale of the McCloskey Road property to his parents is $664,048.43, the total amount of the two mortgage loans that he had with respect to that property at the time of that sale and that his parents discharged. After we take into account respondent's concession regarding petitioner's settlement costs of $16,751.24, the amount realized is $647,297.19.

Based upon our examination of the entire record before us and taking into account respondent's concession with respect to petitioner's settlement costs of $16,751.24, we find that for his taxable year 2007 the amount of capital gain from

**[*14]** petitioner's sale of the McCloskey Road property is $372,585.19. Taking into account respondent's concession with respect to the $250,000 exclusion from gross income under section 121, we find that petitioner is required to recognize for that year $122,585.19 of long-term capital gain from that sale.

We consider finally the addition to tax under section 6651(a)(1) and the accuracy-related penalty under section 6662(a) that respondent determined in the notice. Respondent bears the burden of production with respect to that addition to tax and that accuracy-related penalty. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). To satisfy respondent's burden of production, respondent must come forward with sufficient evidence showing that it is appropriate to impose the addition to tax and the accuracy-related penalty that are at issue. See Higbee v. Commissioner, supra at 446. Although respondent bears the burden of production with respect to the addition to tax under section 6651(a)(1) and the accuracy-related penalty under section 6662(a), respondent "need not introduce evidence regarding reasonable cause, substantial authority, or similar provisions. * * * the taxpayer bears the burden of proof with regard to those issues." Id.

With respect to the addition to tax under section 6651(a)(1), that section imposes an addition to tax for failure to file timely a tax return. Petitioner filed his

[*15] 2007 return in June 2013. On the record before us, we find that respondent has satisfied respondent's burden of production under section 7491(c) with respect to the addition to tax under section 6651(a)(1) that respondent determined.

The addition to tax under section 6651(a)(1) does not apply if the failure to file timely is due to reasonable cause and not to willful neglect. See sec. 6651(a)(1). At trial, petitioner testified, and we have found, that he did not file timely a tax return for his taxable year 2007 because he was unable to pay any tax due for that year. A taxpayer's inability to pay tax does not constitute reasonable cause for the taxpayer's failure to file timely a tax return. See Mali v. Commissioner, T.C. Memo. 2011-121, 2011 WL 2162913, at *5. On the record before us, we find that petitioner's failure to file timely his 2007 return was due to willful neglect and not to reasonable cause.

Based upon our examination of the entire record before us, we find that petitioner is liable for his taxable year 2007 for the addition to tax under section 6651(a)(1).

With respect to the accuracy-related penalty under section 6662(a), that section imposes an accuracy-related penalty of 20 percent of the underpayment to which section 6662 applies. Section 6662 applies to the portion of any underpayment which is attributable to, inter alia, negligence or disregard of rules or

**[\*16]** regulations, sec. 6662(b)(1), or a substantial understatement of tax, sec. 6662(b)(2).

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for, and that the taxpayer acted in good faith with respect to, such portion. Sec. 6664(c)(1).

In his 2007 return that he filed late, petitioner did not include in gross income any gain from the sale of the McCloskey Road property. He failed to do so even though he knew that when his parents acquired that property they had discharged the balances totaling $505,753.39 and $158,295.04, respectively, of two loans that he had outstanding with respect to that property. On the record before us, we find that respondent has satisfied respondent's burden of production under section 7491(c) with respect to the accuracy-related penalty under section 6662(a) that respondent determined.

The record is devoid of reliable evidence and sound argument as to why respondent's determination under section 6662(a) should not be sustained. At trial, petitioner merely indicated that if we should find that he has no gain from the sale of the McCloskey Road property, he would not be liable for the accuracy-related penalty.

**[*17]** On the record before us, we find that petitioner made no attempt to comply with the requirements of the Code in determining the amount of any gain from the sale of petitioner's residence and that consequently he failed to do what a reasonable person would do under the circumstances. On that record, we further find that petitioner was negligent and disregarded regulations.

On the record before us, we also find that there was no reasonable cause for, and that petitioner did not act in good faith with respect to, the underpayment for his taxable year 2007.

Based upon our examination of the entire record before us, we find that petitioner is liable for his taxable year 2007 for the accuracy-related penalty under section 6662(a).

We have considered all of the parties' respective contentions and arguments that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing and the concessions of the parties,

Decision will be entered

under Rule 155.